# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:09-CR-123-TLS |
| | ) | |
| ROBERT TAPP | ) | |

## OPINION AND ORDER

The Defendant, Robert Tapp, pleaded guilty to receiving materials involving the sexual exploitation of minors, a violation of 18 U.S.C. § 2252(a)(2), and he is awaiting sentence. The applicable guideline range for the Defendant's offense of conviction is 87 to 109 months of imprisonment. The Defendant requests that the Court grant him a downward variance from this range and sentence him to 60 months imprisonment, which is the statutory mandatory minimum. (Def.'s Mot. for Downward Departure, ECF No. 41.) The Government opposes the Defendant's request for a variance and argues that a sentence within the advisory guideline range is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in 18 U.S.C. § 3553(a)(2). (Govt's Opp'n, ECF No. 46.) The parties have been fully heard on this issue and desire a ruling from the Court prior to the Defendant's sentencing date.

## BACKGROUND

On December 16, 2009, the Defendant was indicted on charges that from May 14, 2009, until May 16, 2009, he knowingly received material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) (Count 1), and that on or about July 20, 2009, he knowingly possessed with intent to view material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 2). The Defendant was arrested on January 28,

2010. On February 2, he entered a plea of not guilty to the charges, and he was released on bond to home detention with electronic monitoring. On March 22, the Defendant and the Government entered a written Plea Agreement in which the Defendant agreed to plead guilty to Count 1 of the Indictment in return for the dismissal of Count 2 and for the Government's recommendations that he receive a reduction for acceptance of responsibility and a sentence equal to the minimum of the applicable guideline range. On April 1, the Court conducted a change of plea hearing and accepted the Defendant's plea of guilty to Count 1 of the Indictment. The Court referred the matter to Probation and Pretrial Services for the preparation of a presentence investigation report (the PSR).

The PSR sets a base offense level of 22 under U.S.S.G. § 2G2.2(a). It applies a reduction of 2 levels because the Defendant's conduct was limited to receipt of material as opposed to trafficking or distribution, § 2G2.2(b)(1); an enhancement of 2 levels because the offense involved depictions of prepubescent minors who had not attained the age of 12 years, § 2G2.2(b)(2); an enhancement of 4 levels because the offense involved material portraying sadistic conduct or other depictions of violence, § 2G2.2(b)(4); an enhancement of 2 levels for use of a computer, § 2G2.2(b)(6); and an enhancement of 4 levels based on the number of images possessed, § 2G2.2(b)(7)(C). The PSR recommended a 3-level reduction for acceptance of responsibility under § 3E1.1(a) and (b) because the Defendant entered a timely guilty plea. This yielded a total offense level of 29. Coupled with the Defendant's criminal history category of I, the advisory guideline range of imprisonment is reported in the PSR as 87 to 108 months.

The Defendant filed objections to the PSR with the probation officer, but he has acknowledged that these objections do not affect the calculation of the advisory guideline range.

2

The objections pertain to the probation officer's characterization of the room where the computer containing pornography was located, the Defendant's ability to pay a fine, and the probation officer's conclusion that she has no information that would warrant a sentence outside the advisory guideline range. On July 8, the Defendant filed a Motion for Downward Variance [ECF No. 41], setting forth his argument that, based on the nature and circumstances of the offense and his history and characteristics, a sentence of 60 months is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in 18 U.S.C. § 3553(a). On August 13, the Government filed its Opposition to Imposition of Sentence Outside Advisory Guideline Range [ECF No. 46]. The Government argues that the circumstances of this case do not justify a downward variance.

On September 7, the Court conducted an evidentiary hearing. The Defendant was present in person and represented by attorney Robert Wright. The Government was represented by AUSA Lesley Miller-Lowery. The Defendant's exhibits included pictures of his wife's craft room; a June 28, 2010, Report from the United States Department of Justice, Criminal Division, to the Sentencing Commission; an Evaluation of the Defendant by the National Institute for the Study, Prevention, and Treatment of Sexual Trauma; Periodic Reports from Phoenix Associates; a May 2004 Report from the Sentencing Commission on Recidivism; an October 2009 Report on the History of the Child Pornography Guidelines; and an article entitled "Deconstructing the Myth of Careful Study: a Primer on the Flawed Progression of the Child Pornography Guidelines," authored by Troy Stabenow, and dated January 1, 2009. Counsel presented argument to supplement their briefing regarding the Defendant's request for a variance and his objections to the PSR. The Defendant's wife, daughter, and son-in-law testified on his behalf.

The Defendant waived further briefing, and the Court granted the Government until October 8 to file a supplemental brief to address the evidentiary material presented. The Court set a November 9 sentencing date. The Government has not filed supplemental briefing.

**ANALYSIS**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) (same). Here, the primary issue involves the second step, the application of the criteria set forth in § 3553(a) to the facts and circumstances of the Defendant's particular case. In imposing a sentence, § 3553(a) requires a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
> (3) the kinds of sentences available;
> (4) the advisory guideline range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson*, 129 S. Ct. at 892; *Rita v. United States*, 551 U.S. 338, 351 (2007). When evaluating the Guidelines recommendation, a court may consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline, *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and the court may reject any guideline on policy grounds, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010). Ultimately, a district court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

**A.**     **The Offense**

A child exploitation task force detective launched software that allowed him to identify computers that were actively connected to the Gnuetella network. He selected an Internet Protocol (IP) address located in Fort Wayne, Indiana, and identified files having naming conventions suggesting that they contained child pornography. The detective, using an enhanced version of Limewire, connected to the IP address and downloaded a file, which was an image depicting a nude female who appeared to be younger than ten years old. A separate file, a video about one minute in running time, depicted what appeared to be a young male performing oral

sex on a prepubescent female. A search pursuant to a subpoena revealed the Defendant as the subscriber for the IP address, which was assigned to him between December 22, 2008, and May 19, 2009. Forensic evidence showed that the Defendant downloaded the video as well as three other videos and eleven images of child pornography. The videos files describing the materials suggest that they involve prepubescent minors or minors under the age of twelve, multiple children, rape and incest, and anal and oral sex.

The Defendant acknowledges that his offense behavior is "very serious." (Def.'s Mot. 8.) However, he also submits that the number of images, 4 videos and 11 still images, which were downloaded from one free internet source from May 15 through July 15, is fewer than most child pornography cases that have come before this Court. (For Guideline purposes, the 4 videos count as 75 images each, § 2G2.2, Application Note 4(B)(ii).)[1] The Defendant contends that he spent a minimal amount of time viewing child pornography and that, after viewing an image, he would attempt to delete it. The Defendant did not save images to any computer storage devices and did not create a library of pornographic material. The Defendant notes that neither the statute nor the advisory guidelines recognize or take into account minimal participation for purposes of determining a defendant's punishment, and he argues that such minimal participation is a proper basis to grant a moderate (27 month), downward variance from the guideline range.

---

[1] The Government argues that the Defendant's assertion that his case involves the fewest images of pornography prompting criminal charges in the Fort Wayne Division of this Court has no basis, and it states that it does not concede this fact. In this Court's own experience, this case is among those with the fewest images. Moreover, the Sentencing Commission has reported that in over 60% of child pornography possession cases sentenced in 2009, defendants  received the greatest enhancement available for the number of images possessed: 5 levels for possession of 600 or more images. U.S.S.G. , *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* at 37.

**B.     The Defendant**

The Defendant is a 68-year-old male with no prior criminal history. He is a life-long resident of Fort Wayne, Indiana, and longtime member of a local church. The Defendant is married with one adult child and an adult stepchild. He lives with his wife in a house that he purchased in 1985 and has owned free and clear since 2005. The Defendant worked in a local dairy business for more than forty-five years before retiring. During his retirement, he has worked at Wal-Mart as a part-time employee, but is currently suspended without pay due to this offense. The Defendant has several health problems, including hyperlipidemia, hypothyroidism, osteoarthritis, and left ventricular dysfunction, for which he is under a doctor's care and taking prescribed medications. His wife also has health problems that, she states, render her unable to work. The Defendant has no history of substance abuse. Since his arrest on January 27, 2010, the Defendant has participated in and complied with the Pretrial Services' home confinement program.

In October 2009, after the Defendant engaged in the criminal conduct but before he was indicted, the Defendant traveled to Baltimore, Maryland, with his wife to be evaluated and assessed by the National Institute for the Study, Prevention and Treatment of Sexual Trauma. The Institute evaluated the Defendant to assess the nature of his sexual behavior and his risk to the community, if any, and to make recommendations for treatment, if needed. The examining psychologist identified the Defendant as the primary informant, along with the Defendant's wife. He also reviewed materials associated with the criminal case and Periodic Reports from Phoenix Associates. The examiner administered two standard psychological tests: The Personality Assessment Inventory, which revealed no psychopathology; and the Multiphasic Sex Inventory,

7

which revealed no sexual disorder. The examiner concluded that the Defendant was forthcoming in acknowledging his wrongdoing, that he did not have a malicious disregard for the well-being of children, that he did not have contact with children or attempt to contact them on the Internet, that his online voyeuristic behavior presented a low risk of re-offense, and that he was not in need of any treatment.

The Defendant voluntarily enrolled in and is currently participating in sex offender treatment at Phoenix Associates Sexual Offender Program. One of his early Reports from Phoenix Associates, which is dated May 31, 2010, states:

> Robert is making progress. He does not minimize or rationalize his offense to the extent that he did earlier in the program. Robert has been learning of empathy in relation to child pornography. He has been involved in discussions relating to victims in the pornography and how they may have been affected. Robert appears open to feedback he receives from group members and therapist.

The Periodic Reports of meetings since then have confirmed that the Defendant displays remorse with regard to the harm he caused others, including the harm caused to children in what he once viewed as a victimless crime, and that he has improved defense mechanisms such as minimizing and rationalizing his behavior.

C.     **The Kinds of Sentences Available and the Guidelines**

The statute requires a 5-year minimum term of imprisonment, with a maximum term of 20 years. 18 U.S.C. § 2252(b)(2). The Guideline range for the Defendant's offense is 87 to 108 months of imprisonment and supervised release of 5 years to life. The Court is aware that the Commission and many other individuals and groups scrutinizing federal sentencing have suggested a need to reassess the Guidelines with respect to child exploitation crimes and

consider reforms. The Defendant argues that the child pornography Guidelines do not deserve the same weight inherent in other guidelines because they did not result from careful study based in empirical analysis and national experience, but are the result of congressional mandates. *See, e.g., United States v. Huffstatler*, 571 F.3d 620, 622–23 (7th Cir. 2009) (collecting district court cases relying on this rationale); *see also* United States Sentencing Commission, *The History of the Child Pornography Guidelines*, Oct. 2009. The Seventh Circuit has held that "regardless of whether a district court *may* consider the empirical basis of U.S.S.G. § 2G2.2 when crafting a sentence, there is no requirement that a district court *must* do so." *United States v. Rodgers*, 610 F.3d 975, 977 (7th Cir. 2010).

According to the United States Sentencing Commission, the 2-level enhancement for possession of material involving children under the age of twelve applied in 94.8% of sentences under § 2G2.2 in fiscal year 2009. United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* at 36–37. The 4-level enhancement for the sadistic or masochistic nature of the material applied in 73.4% of such cases, and the addition of 2 levels for the use of a computer applied 97.2% of the time. The frequency of the application of these enhancements does not necessarily render them flawed and unworthy of this Court's consideration, but a consequence of such frequent application of the enhancements is that even ordinary first-time offenders often qualify for guideline sentences that approach the statutory maximum based solely on sentencing enhancements that are inherent in the crime of conviction. This, in turn, can lead to less of a distinction between the sentences of first-time offenders and those who are more dangerous offenders, who, for example, distribute pornography for pecuniary gain. This undercuts the directive in § 3553(a) to consider the nature and

circumstances of the offense and the history and characteristics of the defendant.

Even though the Defendant's Guideline range does not approach the 20-year statutory maximum, two enhancements (the computer enhancement and the number of images enhancement) lead to an inaccurate indication of the severity of the offense and do not serve to promote the goals of punishment in this case. As for the computer enhancement, when Congress passed the Sex Crimes Against Children Prevention Act of 1995, Pub. L. 104-71 (1995), it directed that the Guidelines be amended to include a computer enhancement of at least 2 levels. Congress also directed the Commission to submit a report to Congress concerning offenses involving child pornography. In this report, the Commission criticized the enhancement because it did not distinguish between serious commercial distributors of online pornography and run-of-the-mill users. *See* United States Sentencing Commission, *Report to Congress; Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, June 1996, at 25–30. Although a computer can provide an effective means to transport material quickly in interstate commerce, it is distributors, traffickers, and those desiring to entice children to engage in sexual activity who most exploit the technology and increase the market for child pornography. For this Defendant, the computer enhancement does not correspond to an elevated seriousness of his offense or to any of the purposes of punishment. There is no indication that he saved the images to electronic storage or intended to sell or distribute them to others for profit or otherwise, and empirical data does not show that using a computer as a means to possess and view pornography is a more serious or culpable offense than viewing the same images if they had been received by another medium, such as through the mail. *Cf. United States v. Hansom*, 561 F. Supp. 2d 1004, 1010–11 (E.D. Wis. 2008) (stating that this enhancement is logically

flawed because on-line pornography generally comes from the same pool of images found in other formats). Accordingly, a 2-point enhancement to the Defendant's base offense level for the use of a computer yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Likewise, the enhancement for the number of images does not further the purposes of punishment in this Defendant's case, and empirical data is lacking as to this enhancement. Despite the fact that a large number of images can be quickly amassed over a short period of time as a result of file swapping over the Internet, the Defendant's computer contained only 4 videos and 11 still images. Although the Guidelines provide for a 4-level enhancement for between 300 and 600 images, a 3-level enhancement for 150 to 300 images, or a 2-level enhancement for 10 to 150 images, these distinctions are not linked to any empirical data pertaining to sentencing and the purposes of punishment, and in this case they do not provide an accurate indication of culpability. Under the Guidelines, each video corresponds to 75 images for purposes of applying the enhancement. The application notes to Sentencing Guideline § 2G2.2 provide that if the length of the video is substantially more than 5 minutes, an upward departure may be warranted. There is no provision that recognizes a downward departure for shorter videos. In this case, other than a single reference to a one-minute video, there is no evidence as to the length of the videos the Defendant possessed, and thus no showing of the actual number of images. Accordingly, a 4-point enhancement to the Defendant's base offense level for the number of images yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

For these reasons, the Court will not give deference to the increase in the advisory

Guideline sentence that is brought about by these specific offense characteristic.

**D.     Sentence**

The possession of child pornography is a form of sexual exploitation of the most vulnerable members of our society, and this is a serious offense. The Court is not persuaded by the Defendant's arguments that the amount of time he spent viewing pornography renders his offense any less serious. However, from its careful review of the record as a whole, the Court has become convinced that a sentence of 87 months is greater than is necessary to meet the purposes of punishment for this Defendant in the circumstances of this case.

The Government advances several arguments against the Defendant's requested variance. First, the Government does not believe that the Defendant's efforts at rehabilitation should be given much weight because they all occurred after his illegal activity was discovered by law enforcement during a search of the Defendant's home. The Government also argues that the Court should be wary of the conclusions of the Institute's doctors because they are based on the Defendant's self-reporting and from information provided by his wife and rest on the assumption that the Defendant was open and candid. The Government also highlights that little was done in the way of "formal psychological testing" (Govt's Opp. 4) and argues that the Personality Assessment Inventory does not indicate what areas are covered by the test and that the Multiphasic Sex Inventory was intended for actual contact offenders, which the Defendant is not. Therefore, asserts the Government, the Court should put no faith in the doctors' conclusions that the Defendant suffers from no sexual disorder, has no malicious disregard for the well-being of children, is in no need of treatment, and is quite capable of refraining from committing these

offenses again. To the contrary, the Government contends that the Defendant's actions evidence a flagrant disregard for the well-being of children, and it points to the fact that the demand for child pornography is created by those who search for it, download it, and view it. Finally, the Government notes that the Defendant's age, poor health, community ties, employment, and church attendance did not prevent him from engaging in the offense of conviction and thus should not be considered in mitigation of his offense.

The Court finds that the Defendant has acknowledged the seriousness of his conduct and admitted it to others in his family, church, and community, as well as to counselors in an effort to gain a proper understanding of his actions and avoid repeating them. He has accepted responsibility and cooperated in all phases of the case. Even if the Defendant did not seek counseling until after the FBI raided his home, his steps to obtain counseling still demonstrate that, at least since his arrest, he has come to understand the wrongfulness of his conduct and is motivated to change both his beliefs and his actions. The Government argues that the very nature of the Defendant's action demonstrate a flagrant disregard for the well-being of children, but the examiners at the Institute persuasively addressed the Defendant's mindset when they noted that although professionals in law enforcement and mental health who work in the area of child pornography are sensitive to how children are harmed in the production of child pornography, most individuals voyeuristically viewing images are less cognizant of such harm. The examiners noted that the Defendant was remorseful when the harm to children was brought to his attention. The examiners were also fully aware that the test being administered typically applied to contact offenders, and the Court has likewise taken this into consideration. Although the Government challenges the result of the Defendant's evaluation, it has not pointed to any contrary findings or

aspects of the offense or the characteristics of the Defendant that would lend support to any claim that he has a sexual disorder, has a malicious disregard for the well-being of children, is in need of treatment, or is not capable of refraining from committing these offenses again. None of the professionals trained in the treatment of sexual disorders, including those who have had repeated contact with him at Phoenix Associates and have counseled and treated him, has given any indication that the Defendant fails to recognize the severity of his actions or has been less than candid.

Other factors also support the conclusion that the Defendant is a low risk to re-offend. Although the Defendant's law-abiding life and his advanced age and health conditions are not factors that mitigate the severity of his offense, they suggest that a sentence of greater than 7 years is a longer incarceration than is necessary to deter the Defendant from re-offending and protect the public from his crimes. The Defendant will pass his 70th birthday while in prison even if he is sentenced to the statutory minimum, and he will do so in poor health. In addition, supervision and other sources of accountability that the Defendant has in place through counseling, church, and family further support the Institute's conclusion that he is motivated to never repeat his actions. The Defendant's actions since his arrest support the conclusion that a sentence of more than 5 years is not necessary to further his rehabilitation efforts. Additionally, a sentence of 87 months is more than is necessary to deter other offenders with similar history and characteristics, and considering this Defendant's particular history and characteristics and the nature and circumstances of his offense, such a sentence in this case may promote disrespect for the law.

In sum, the Court finds, upon consideration of the nature and circumstances of the

offense, the history and characteristics of the Defendant, the kinds of sentences available, and the absence of empirical data to support certain Guidelines related to child pornography, that a sentence below the advisory Guideline range is sufficient but not greater than necessary to satisfy the purposes of sentencing.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion for Variance [ECF No. 41]. The Court finds that a sentence of 60 months is sufficient to meet the purposes of punishment in this case and is consistent with the statute. The Court will address the Defendant's objections to the PSR at the time of sentencing. The Court confirms the telephonic status conference set for November 1, 2010, at 10:30 AM, and the sentence hearing set for November 9, 2010, at 11:00 AM.

SO ORDERED on October 28, 2010.

                                               s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION